UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHNNIE BURKETT,

                Plaintiff,

v.

JAMES SCHIEBER, et al.,

                Defendants.

_____/

Case No. 1:25-cv-439

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court has granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder.  Fed. R. Civ. P. 21.  Applying this standard regarding joinder, the Court will drop as misjoined Defendants Schieber, McLaughlin, and Unknown Party #1.  The Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice.

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against the remaining Defendants for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Parnall Correctional Facility (SMT) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues the following MCF staff in their respective individual capacities: Warden James Schieber, Administrative Assistant April McLaughlin, Warden Assistant Unknown Party #1, Prison Counselor A. Carraillo, and Corrections Officer Unknown Fricke. (Compl., ECF No. 1, PageID.1–2.)

Plaintiff alleges that, on January 2, 2024, Plaintiff requested that Defendant Carraillo send Plaintiff's legal mail to the Michigan Innocence Project. (*Id.*, PageID.2.) Defendant Carraillo originally became "irate," insisting that Plaintiff was "using the legal mail policy for some unforeseen nefarious purpose." (*Id.*) Defendant Carraillo was later informed that he was incorrect, and he sent the mail. (*Id.*) Following the dispute regarding the propriety of Plaintiff's legal mail, Plaintiff was "harassed and threatened" by Defendant Carraillo. (*Id.*) Specifically, Plaintiff alleges that, on or before June 10, 2024, Defendant Carraillo increased Plaintiff's security

classification status, and on July 22, 2024, Defendant Carraillo sent Plaintiff to a behavioral unit.  (*Id.*, PageID.3.)

On September 13, 2024, Plaintiff learned that his mother was sick and in the hospital.  (*Id.*)  The next day, Defendant Fricke wrote Plaintiff a "false misconduct."  (*Id.*)  When Plaintiff asked Defendant Fricke why he wrote the false misconduct, Defendant Fricke responded, "Ask your old P.C. and get your black nappy headed a** out of my face before I put you in the hole."  (*Id.* (asterisks added).)   The false misconduct was dismissed on September 21, 2024.  (*Id.*)

On September 25, 2024, Plaintiff had his last telephone call with his mother; she passed away four days later.  (*Id.*)  On October 1, 2024, Plaintiff's fiancé called the prison and spoke with Defendant McLaughlin to request an in-person funeral visit for Plaintiff.  (*Id.*, PageID.4.)  Defendant McLaughlin told Plaintiff's fiancé that she could not speak with Defendant Schieber.  (*Id.*)  Plaintiff then wrote a kite to Defendant Schieber for assistance with the in-person funeral visit.  (*Id.*)

On October 3, 2024, Plaintiff's fiancé again called the MCF and spoke with Defendants McLaughlin and Unknown Party #1.  (*Id.*)  When asked about an in-person funeral visit for Plaintiff, Defendants McLaughlin and Unknown Party #1 refused to allow Plaintiff's fiancé to speak to Warden Schieber and instead stated, "He likes to write grievances[,] so I wouldn't approve it anyway."  (*Id.*)  Plaintiff was not able to attend the funeral or see its video recording.  (*Id.*)

Plaintiff alleges that the actions of Defendant Carraillo were retaliatory, in violation of Plaintiff's First Amendment rights, and that the actions of Defendant

Fricke, in issuing Plaintiff a false misconduct charge, were done to retaliate against Plaintiff because of Plaintiff's race and because Plaintiff had a disagreement with Defendant Carraillo.  (*Id.*, PageID.4–5.)  Plaintiff also alleges that the actions of Defendants McLaughlin, Schieber, and Unknown Party #1, in denying Plaintiff the opportunity to attend his mother's funeral, were done in retaliation for Plaintiff having submitted grievances, and in violation of Plaintiff's right to procedural due process.  (*Id.*, PageID.5.)  As a result of the events described in Plaintiff's complaint, Plaintiff seeks monetary, declaratory, and injunctive relief.  (*Id.*, PageID.5–6.)

## II.    Misjoinder

Plaintiff sues five individual Defendants and describes two categories of events: the first pertaining to alleged retaliation following Plaintiff's "disagreement" with Defendant Carraillo over Plaintiff's legal mail, and the second pertaining to Plaintiff's inability to attend his mother's funeral based upon alleged retaliation for Plaintiff having filed grievances.  At this stage, the Court must address whether these Defendants and claims are properly joined in a single lawsuit.

### A.    Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2).  Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party.

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  A district judge necessarily has considerable discretion in applying Rules 18 and 20.  The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner

may file without prepayment of the required fees. 28 U.S.C. §
1915(g) . . . .

A buckshot complaint that would be rejected if filed by a free person—
say, a suit complaining that A defrauded the plaintiff, B defamed him,
C punched him, D failed to pay a debt, and E infringed his copyright, all
in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F.

App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims

against new defendants based on actions taken after the filing of his original

complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined

claims and Defendants in a single action would permit him to circumvent the PLRA's

filing fee provisions.  Furthermore, he would avoid the consequences of filing at least

three actions with all claims dismissed as meritless, frivolous, or for failure to state

a claim.  Courts are obligated to reject misjoined complaints like Plaintiff's.  *See*

*Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Prison Counselor Carraillo is the first Defendant discussed in

the facts of Plaintiff's complaint.[2]  (See ECF No. 1, PageID.1.)  Plaintiff describes that

he had a disagreement with Defendant Carraillo about his legal mail (*id.*, PageID.2),

and that Defendant Carraillo took unfavorable actions against him in June and July

2024 (*id.*, PageID.3).  Plaintiff then goes on to describe that Defendant Fricke issued

---

[2] The analysis of joinder must start somewhere. By accepting the factual allegations
against the Defendant Carraillo as the foundation for the joinder analysis, the Court
is considering the issue of joinder of parties as Plaintiff has presented the factual
allegations in his complaint.

Plaintiff a false misconduct charge and, when asked for the reasoning behind the false misconduct charge, was told that he should "[a]sk [his] old P.C.," presumably referring to Defendant Carraillo.  (*Id.*)  The Court will liberally construe these allegations to involve common questions of law and fact and, therefore, be sufficiently transactionally related to be joined in this single lawsuit.

Turning to Rule 18, Plaintiff could join to these claims any other claims against Defendants Carraillo and Fricke.  Fed. R. Civ. P. 18(a) ("A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party.").  Plaintiff suggests that Defendants Carraillo and Fricke took their actions against Plaintiff because of Plaintiff's race.  (ECF No. 1, PageID.3.)  Therefore, claims against these Defendants for violation of Plaintiff's right to equal protection are also properly joined under Rule 18.

But Plaintiff has not alleged any facts to support an inference that his claims against Defendants Schieber, McLaughlin, and Unknown Party #1 for denying Plaintiff the opportunity to attend his mother's funeral, arose out of the same transactions and occurrences as the claims against Defendants Carraillo and Fricke. Plaintiff does not indicate that the actions of these Defendants on October 2024 are in any way connected to Plaintiff's January 2024 disagreement with Defendant Carraillo or that these Defendants were even aware of the disagreement over Plaintiff's legal mail.  Plaintiff has, therefore, improperly joined Defendants Schieber, McLaughlin, and Unknown Party #1.

## B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendants Schieber, McLaughlin, and Unknown Party #1, the Court must determine an appropriate remedy.  Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action."  *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate.").  "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'"  *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties."  *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845.  Such gratuitous harm exists if the

dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice.  *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Plaintiff brings this action under 42 U.S.C. § 1983.  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).  Plaintiff's allegations against Defendants Schieber, McLaughlin, and Unknown Party #1 stem from events beginning in October 2024.   Therefore, Plaintiff's causes of action against Defendants Schieber, McLaughlin, and Unknown Party #1 accrued just over six months ago.  Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against misjoined Defendants Schieber, McLaughlin, and Unknown Party #1.  Thus, Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against misjoined Defendants Schieber, McLaughlin, and Unknown Party #1 are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Schieber, McLaughlin, and Unknown Party #1 because they are misjoined.  The Court will dismiss Plaintiff's claims against Defendants Schieber,

McLaughlin, and Unknown Party #1 without prejudice to the institution of a new, separate lawsuit or lawsuits.[3]

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

---

[3] If Plaintiff wishes to proceed with his claims against one or more of the misjoined Defendants, he may do so by filing new civil action(s) on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed in forma pauperis. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does mean that all claims arising out of these events are properly joined.

unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    First Amendment Retaliation Claims

Plaintiff alleges that Defendants Carraillo and Fricke retaliated against Plaintiff because Plaintiff had a disagreement with Defendants Carraillo over the handling of Plaintiff's legal mail. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action

was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

An inmate has a right to submit "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).  Here, Plaintiff suggests that he got into a "disagreement" with Defendant Carraillo regarding Plaintiff's legal mail intended for the Michigan Innocence Clinic.  The Court finds that this disagreement, whether oral or written, satisfies the first element of a claim for First Amendment retaliation.

The Court also finds that the actions that Plaintiff attributes to Defendants— increasing Plaintiff's security classification level, sending Plaintiff to a behavioral unit, and issuing Plaintiff a misconduct charge—are each sufficient to satisfy the

adverse action element in that they would likely dissuade a person of ordinary firmness from engaging in First Amendment protected activity.

However, Plaintiff's claims falter at the element of causation.  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  However, "alleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state ... a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 Fed.Appx. 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Nothing within Plaintiff's complaint plausibly suggests that Defendant Carraillo's actions in increasing Plaintiff security classification level or sending Plaintiff to a behavioral unit were related to a disagreement over the handling of legal mail over six months earlier.  The same is true of Defendant Fricke's false misconduct report.  While Plaintiff alleges that Defendant Fricke attributed some responsibility for the false misconduct report to Defendant Carraillo, Plaintiff's "old PC," Plaintiff has not alleged any facts from which the Court can infer that Defendant Carraillo

bore any retaliatory animus toward Plaintiff in response to Plaintiff's protected activity. While the Court accepts as true that Defendants Fricke and Carraillo took unfavorable actions against Plaintiff, it simply cannot infer anything about their motivation from the vague allegations in Plaintiff's complaint. Plaintiff instead appears to ask this Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that Defendants acted with retaliatory intent. *See Iqbal*, 556 U.S. at 679. Plaintiff has not met his initial burden. Therefore, the Court will dismiss Plaintiff's retaliation claims against Defendants Carraillo and Fricke.

### B.    Fourteenth Amendment Equal Protection Claims

Plaintiff claims that Defendant Carraillo "as a routine retaliates against [B]lack or [A]frican-[A]merican prisoners that disagree with him," and that Defendant Fricke told Plaintiff to get his "[B]lack nappy headed a** out of [his] face." (ECF No. 1, PageID.3 (asterisks added).) Plaintiff brings claims against Defendant Fricke for racial discrimination. (*Id.*, PageID.5.) The Court will construe Plaintiff's complaint as also raising an Equal Protection claim against Defendant Carraillo.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of

individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to state an equal protection claim premised upon racial discrimination.  Plaintiff claims that Defendant Carraillo also raised the "assault level" of another prisoner with whom he had a disagreement (ECF No. 1, PageID.3); however, Plaintiff fails to identify any non-African American prisoner who was similarly situated in all relevant respects but treated differently.

Likewise, although Plaintiff alleges that Defendant Fricke used racially derogatory language when he told Plaintiff to get Plaintiff's "[B]lack nappy headed a** out of [his] face," an allegation that a prison official used racial slurs, standing

18

alone, does not violate the Fourteenth Amendment's guarantee of equal protection. *See Williams v. Kaufman County,* 352 F.3d 994, 1013 & n. 61 (5th Cir. 2003). Plaintiff's complaint fails to suggest that Defendant Fricke's decision to issue Plaintiff a false misconduct was motivated by racial discrimination as opposed to his stated reason having some connection to Defendant Carraillo, Plaintiff's "old P.C." Plaintiff again fails to identify any similarly situated comparators.

Ultimately, Plaintiff's complaint contains no facts or allegations to support his equal protection claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Instead, any allegations of discriminatory treatment are wholly conclusory. As discussed above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's Equal Protection claims will be dismissed.

## C.    Fourteenth Amendment Procedural Due Process Claims

Finally, although Plaintiff does not invoke the protections of the Fourteenth Amendment in his claims against Defendants Carraillo and Fricke, the facts that Plaintiff has alleged may be construed to raise a Fourteenth Amendment claim related to the "false misconduct."

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v.*

*Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

There is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003).  "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false."  *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed").  Plaintiff had that opportunity and succeeded in convincing the hearing officer of his position.  Accordingly, any intended procedural due process claim based upon that misconduct charge will be dismissed.

## Conclusion

Pursuant to Rule 21, the Court determines that Defendants Schieber, McLaughlin, and Unknown Party #1 will be dropped as misjoined and the Court will dismiss Plaintiff's claims against these Defendants without prejudice pursuant to

Rule 21.  Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore*, 114 F.3d at 611.  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the full appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the full appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:  May 19, 2025                          /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge

21